# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **D.L.-1, D.L.-2, and G.L.**

**No. 16-1153** (Jackson County 15-JA-136, 15-JA-137, & 15-JA-138)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father L.W., by counsel Teresa C. Monk, appeals the Circuit Court of Jackson County's September 15, 2016, order terminating his parental rights to D.L.-1, D.l.-2, and G.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Erica Brannon Gunn, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating him as an abusing parent; (2) permitting the DHHR to file a case plan that did not properly address the problems that led to the petition's filing; and (3) terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2015, the DHHR filed an abuse and neglect petition against the parents based upon allegations of the parents' drug use and domestic violence in the home. The petition also alleged that petitioner was previously convicted for drug offenses and was indicted on criminal charges in June of 2015, including charges of operating or attempting to operate a clandestine drug laboratory; possession of substances used as precursors to manufacturing methamphetamine; manufacturing methamphetamine; and exposing a child to methamphetamine.[2] According to the guardian, although the original petition did not include

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children share the same initials, we will refer to them as D.L.-1 and D.L.-2 throughout this memorandum decision.

[2] The DHHR subsequently filed two amended petitions. The first amended petition added additional parties to the matter that are not at issue in this appeal. The second amended petition

(continued . . . )

allegations to this effect, the DHHR initiated this action less than one month after another infant in the home, G.L., died.

In February of 2016, petitioner stipulated to the DHHR's allegations that he exposed the children to domestic violence. Petitioner also admitted to a prior conviction of possessing precursors to manufacturing methamphetamine and that he currently had charges pending for several methamphetamine-related crimes, including exposing a child to methamphetamine.

In April of 2016, the circuit court held a series of dispositional hearings. Ultimately, the circuit court granted petitioner a post-adjudicatory improvement period. However, during his improvement period, petitioner failed to comply with mandatory drug screens, failed to comply with parenting and adult life skills services such that the provider terminated the same, and was found to have a poor prognosis for improved parenting by a parenting evaluator. As such, the DHHR filed a motion to revoke petitioner's improvement period and terminate his parental rights in June of 2016.

In July of 2016, the circuit court held a dispositional hearing. Petitioner did not attend the hearing, although he was represented by counsel. During the hearing, petitioner's service provider testified to his failure to comply with services. The circuit court found that petitioner failed to participate in the improvement period and that the children's best interests required termination of his parental rights. As such, the circuit court terminated petitioner's parental rights.[3] It is from the dispositional hearing that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

included allegations of chronic domestic violence in the home, in addition to allegations that petitioner and the mother abused and manufactured methamphetamine.

[3] The record and the parties are silent as to the status of the mother's parental rights. According to the DHHR, as of the filing of its response brief, the children are all currently placed together in a foster home with a permanency plan of adoption therein.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, the Court rejects petitioner's argument that the circuit court erred in adjudicating him as an abusing parent.[4] On appeal, petitioner argues that the allegations in the petition, even if true, do not rise to the level of abuse or neglect because petitioner was not the aggressor in the domestic violence that took place in the home and because his involvement in criminal activity does not constitute abuse. However, the Court finds that petitioner is not entitled to challenge the sufficiency of his adjudication on appeal because he stipulated to the same. We have previously held that "'[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.' Syllabus Point 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W.Va. 213, 719 S.E.2d 381 (2011). Further,

> "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

*Id.* at 215, 719 S.E.2d at 383, Syl. Pt. 3.

The record in this matter is clear that petitioner voluntarily chose to stipulate to the adjudication against him. Moreover, petitioner did not object to his adjudication as an abusing parent, nor did he challenge the sufficiency of the allegations against him as contained in the DHHR's petition. In fact, the circuit court advised petitioner "that by making admissions, the [circuit c]ourt would find that [he was] an abusing . . . parent and that the [children] were . . . abused and neglected children." Despite the circuit court's warnings, petitioner admitted to his role in the domestic violence in the home as well as his indictment for several drug offenses, including exposing a child to methamphetamine. After petitioner made his stipulation, the circuit court asked both the guardian and counsel for the DHHR if the stipulation was sufficient. Both responded affirmatively, and petitioner made no objection to the circuit court proceeding to adjudicate him as an abusing parent. For these reasons, the Court finds that petitioner is entitled

---

[4]The record shows that the circuit court actually adjudicated petitioner as "an abusing and neglecting parent" based on his admissions. However, West Virginia Code § 49-1-201 defines "abusing parent" as "a parent . . . whose conduct has been adjudicated by the court to constitute child abuse *or neglect* as alleged in the petition charging child abuse or neglect." (emphasis added) Because the definition of "abusing parent" includes parents who have been adjudicated of abuse and/or neglect, the Court will use the correct statutory term throughout this memorandum decision.

to no relief in regard to adjudication in this matter, as he clearly invited any such error by entering into a stipulated adjudication.

Next, the Court finds no merit to petitioner's argument regarding the circuit court's alleged error in permitting the DHHR to file a case plan that failed to address the issues of abuse and neglect in the home.[5] Specifically, petitioner alleges that all the terms and conditions of his improvement period concerned issues of substance abuse, which was not a ground upon which he was adjudicated. We do not agree. Petitioner's stipulation included admissions to past drug offenses and additional criminal charges stemming from drug offenses that were currently pending against him, including one criminal charge for exposing a child to methamphetamine. As such, it is clear that issues of substance abuse were central to petitioner's adjudication, in addition to the allegations of domestic violence in the home. Moreover, the Court finds no merit to petitioner's allegation that none of the terms and conditions addressed the major concern of domestic violence. Petitioner specifically lists his participation in parenting and life skills education, as well as his participation in a parental fitness evaluation, as services that addressed

---

[5]In his argument in support of this assignment of error, petitioner sets forth, in just two sentences with no citation to law or the record, that no one other than a DHHR worker signed the case plan and that "there is nothing in the record that suggests that the parents ever had a copy of the plan." To the extent that petitioner is attempting to argue that he could not comply with the terms of his improvement period because he did not receive a copy of the case plan, the Court finds no merit to this argument. Specifically, in its May 11, 2016, order granting petitioner an improvement period, the circuit court directed that his improvement period would include

> the following terms and conditions: (1) Meaningful participation in parenting; (2) Meaningful participation in Adult Li[f]e Skills; (3) Out-patient substance abuse treatment; (4) Random drug screens; (5) If there are failed drug screens, then [petitioner] will be required to complete in-patient drug screening; (6) Maintain verifiable employment; (7) Maintain safe and adequate housing; (8) Refrain from associating with individuals with [Child Protective Services] history, criminal history, and substance abuse history; and (9) Individual counseling including domestic violence programming.

We have previously held that

> "[t]he purpose of the family case plan . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, in part, *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003). Given that the record clearly shows that petitioner was presented with an organized, realistic set of goals designed to resolve the conditions of abuse and neglect in the home, the Court finds no error in regard to petitioner's allegation that he did not receive a copy of the case plan below.

4

only his substance abuse. However, petitioner provides no explanation as to how these services would not also address the issues of domestic violence in the home. On the contrary, the DHHR states that these services were designed to address the issues of domestic violence. Accordingly, the Court finds no error in the circuit court permitting the DHHR to file the case plan at issue, as it appropriately listed services designed to remedy the conditions of abuse and neglect in the home.

Finally, the Court finds no error in the circuit court's termination of petitioner's parental rights. Petitioner alleges that the circuit court erred in holding the dispositional hearing in his absence. According to petitioner, the circuit court failed to continue the hearing and, thus, denied him the right to testify and present evidence. We do not agree. Not only is the record devoid of petitioner's counsel requesting a continuance at the dispositional hearing, the record shows that petitioner had actual notice of the dispositional hearing. According to the record, petitioner's counsel instructed petitioner to be at the courthouse at the specific time of the dispositional hearing on the morning of that hearing. Despite this notice, petitioner failed to appear. Moreover, while it is true that West Virginia Code § 49-4-604(a) provides parents with "an opportunity to be heard" at the dispositional hearing, petitioner's absence at the dispositional hearing is not violative of this requirement. On the contrary, petitioner's counsel was present at the hearing and fully represented his interests. As such, we find no error in the circuit court conducting the dispositional hearing in petitioner's absence.

Moreover, in reaching termination of petitioner's parental rights, the circuit court heard testimony that, out of the thirty-four drug screens he was supposed to attend, petitioner appeared for only five. Further, petitioner's service provider testified to cancelling petitioner's services due to his noncompliance. Accordingly, the circuit court found that petitioner was unwilling or unable to cooperate with the DHHR in the development of a reasonable family case plan. Pursuant to West Virginia Code § 49-4-604(c)(2), this situation constitutes one in which there is no reasonable likelihood the conditions of abuse or neglect can be substantially corrected, which the circuit court also found. Additionally, the circuit court found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Further, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error below.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

5

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 15, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

6