# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **A.M., T.M., and J.M.-2**

**No. 16-0788** (Taylor County 13-JA-19, 13-JA-20, & 15-JA-9)

**FILED**

**June 16, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.M.-1, by counsel Jason T. Gains and Ryan C. Shreve, appeals the Circuit Court of Taylor County's July 21, 2016, order terminating his parental rights to then four-year-old A.M., five-year-old T.M., and one-year-old J.M.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court (1) violated his constitutional and statutory rights; (2) erred in terminating his parental rights to the children based on erroneous findings of abuse and neglect; (3) plainly erred in terminating his parental rights to the youngest child, J.M., when the DHHR presented no evidence that J.M. was abused or neglected and the circuit court made no finding that J.M. was abuse or neglected; and (4) erroneously entered restraining orders prohibiting him from contacting J.M. or J.M.'s mother.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because petitioner and one of the children share the same initials, we include numbers (J.M.-1 and J.M.-2) to distinguish them in this memorandum decision.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent only minor stylistic revisions and those revisions have no impact on the Court's decision herein.

In September of 2013, the DHHR filed an abuse and neglect petition ("first petition") against the mother of A.M. and T.M. following her arrest for felony child abuse and neglect. In the petition, the DHHR alleged that the arrest was based on the children's unsafe and unsanitary living conditions. No allegations against petitioner were made in the first petition. Upon their mother's arrest, A.M. and T.M. were placed in the care, custody, and control of petitioner.

On June 23, 2014, the DHHR filed an amended abuse and neglect petition ("second petition") alleging that petitioner failed to protect his children from abuse and neglect because he knew or should have known that it occurred. On the same day, the circuit court held a status hearing. Petitioner was present, but not represented by counsel as there were no allegations against him in the first petition. At the outset of that hearing, the circuit court informed petitioner of the second petition's filing; appointed him counsel; and directed him to remain in the courtroom to be served with the second petition.

Also at the hearing, the guardian raised concerns that petitioner may have abused controlled substances or alcohol while the children were in his custody, based on observations that petitioner appeared disoriented and was often late to and confused about visits between the children and their mother. The guardian requested that the circuit court order petitioner to submit to a drug and alcohol screen. The circuit court asked petitioner whether he had taken any medications or controlled substances for which he had no prescription. Without objection to the question by petitioner or his counsel, petitioner answered, "No." Petitioner further answered that he would not test positive for drugs, if tested. The circuit court adjourned the hearing for petitioner to submit to a drug screen. He tested positive for marijuana. Petitioner explained that he had inhaled second-hand marijuana smoke, but he stated that he had not directly used drugs. He further indicated that he left the children with their grandparents, with whom he and the children reside, when he was around the marijuana smoke. Based on the evidence, the circuit court permitted the children to remain in petitioner's physical custody provided that he submit to drug screens.

On July 8, 2014, the DHHR filed another amended petition ("third petition") alleging that petitioner had abused and/or neglected his children due to his drug use, as evidenced by his positive drug screen for marijuana on June 23, 2014, in addition to the previous allegations contained in the second petition. Thereafter, petitioner submitted to additional drug screens. While the details of his drug screens are unclear, the record indicates that on several occasions petitioner tested positive for controlled substances and provided diluted samples.

On July 15, 2014, the circuit court held an adjudicatory hearing on the allegations in the third petition. At that hearing, petitioner, with advice of counsel, stipulated that he "abused and/or neglected his infant child(ren) through his failure to protect and ensure for their wellbeing and through his resistance to services offered by the [DHHR] meant to remediate the pending issues . . . [and] . . . through his substance abuse, as evidence [sic] by multiple positive and/or dilute[d] drug screens." Petitioner stated that his stipulation was knowing, intelligent, and voluntary. After accepting the stipulation, the circuit court granted petitioner a six-month, post-adjudicatory improvement period.

In September of 2014, the circuit court held a review hearing on petitioner's post-adjudicatory improvement period. Petitioner did not appear in person, but he was represented by counsel, who indicated that she had difficulty communicating with petitioner. It was also reported that petitioner failed to appear for drug screens on three occasions; provided diluted samples on one occasion; and tested positive for marijuana on another occasion. At the conclusion of the hearing, the circuit court ordered that petitioner could no longer reside with the children at their grandparents' home.

In December of 2014, at the request of the children's grandparents, the DHHR removed the children from the grandparents and placed them in foster care. Later that month, at a status hearing, the circuit court granted the DHHR's motion to add petitioner's newly born child, J.M.-2, to the on-going abuse and neglect proceedings. Petitioner did not object to the motion or ruling regarding J.M.-2

In February of 2015, the circuit court entered an order on its ruling from the hearing in December of 2014 that the "petition [was] ordered amended to reflect [the] birth of [J.M.-2]" and to include J.M.-2's non-offending mother in the proceedings ("fourth petition"). At a status hearing held in March of 2015, it was again reported that petitioner failed to fully submit to drug screens as directed.

In June of 2015, the circuit court held a hearing at which it found that petitioner abused and neglected J.M.-2 The circuit court ruled that it could take judicial notice of petitioner's prior adjudication as to A.M. and T.M., which would include petitioner's admissions and stipulations related to those children, and petitioner's failures during his prior improvement period, which would include his failed drug screens. Petitioner presented no evidence or argument at the hearing, and at no time did petitioner object to the circuit court's rulings. It was further reported at the hearing that petitioner continued to fail to appear for drug screens; to give diluted samples; and to test positive for marijuana.

In July of 2015, at the first dispositional hearing, the circuit court granted petitioner a dispositional improvement period. At a status hearing several months later, the circuit court noted that petitioner continued to fail to comply with drug screens as directed.

In February of 2016, the circuit court held a second dispositional hearing. At that hearing, several service providers testified that petitioner failed to substantially comply with the terms and conditions of his improvement period. Petitioner only sporadically attended and participated in parenting and adult-life skills classes, and he had not attended any such classes since November of 2015. It was also noted that in June of 2015 petitioner attempted suicide and was hospitalized for mental health concerns. A mental health provider testified that petitioner initially sought treatment at a mental health clinic after his hospitalization, but he was discharged for non-compliance after only two therapy sessions. Further, the DHHR caseworker testified regarding petitioner's continued failures with positive, diluted, or missed drug screens.[3] Petitioner testified

[3]Following the second dispositional hearing, due to a computer print-out error, the DHHR caseworker submitted a corrected statement of petitioner's missed drug screens. While she

(continued . . .)

that his failure to comply with drug screens, therapy, and other services was due to a lack of transportation. Following the hearing, by order entered on July 21, 2016, the circuit court terminated petitioner's parental rights to the children.[4] The circuit court also granted, without objection, the DHHR's motion to restrain petitioner's contact with J.M.-2 and J.M.-2's mother. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, we find no error in the circuit court's order terminating petitioner's parental rights to the children.

On appeal, petitioner first argues that the circuit court violated his constitutional and statutory rights when it proceeded on the first and second petitions without appointing him an attorney and without providing him proper notice. Notwithstanding petitioner's arguments, which the DHHR and guardian contest, it is undisputed that a third petition was filed after the first and second petitions. The third petition contained allegations of petitioner's drug use and failure to protect the children. Petitioner does not assign error to the appointment of an attorney or notice related to the filing of the third petition. Given the filing of the third petition without issue, we find that petitioner's claims regarding the first and second petitions were rendered moot. "Courts will not ordinarily decide a moot question." Syl. Pt. 1, *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936). "Moot questions or abstract propositions, the decisions of which would avail nothing in the determination of controverted rights of persons or of property, are not

---

testified that petitioner completed only twenty-eight of his fifty-one scheduled drug screens, the corrected account provided that petitioner completed forty of his fifty-one scheduled drug screens. The circuit court noted this correction in its final order.

[4]Petitioner's parental rights were terminated below. According to the DHHR and guardian ad litem, all three children are placed with their respective mothers where they will remain. The mother of A.M. and T.M. appears to have successfully completed an improvement period, and her children were returned to her in April of 2016. The mother of J.M. is non-offending, and J.M. has been in her care, custody, and control since his birth.

properly cognizable by a court." Syl. Pt. 5, *W.Va. Educ. Ass'n v. Consol. Pub. Ret. Bd.*, 194 W.Va. 501, 460 S.E.2d 747 (1995) (internal citation omitted).

Petitioner further argues that the circuit court erred in questioning him at the June 23, 2014, hearing about his drug use and in ordering him to submit to a drug screen at that time. Petitioner claims that these errors formed the basis of allegations later made in amended petitions and upon which his parental rights were ultimately terminated. However, we find that petitioner forfeited this argument below by failing to object to the circuit court's questioning or to the drug screen.[5] The record on appeal contains no objection by petitioner or his counsel (who was appointed and represented petitioner prior to any discussion of drug use at the June 23, 2014, hearing) to either the circuit court's questions about drug use or the subsequent drug screen at the June 23, 2014, hearing, which are raised as error for the first time on appeal.[6] We have explained that a party has a duty to raise an objection below or risk forfeiting the claim on appeal to this Court. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 821, 679 S.E.2d 650, 653 (2009) (internal citation omitted). As petitioner did not object below, we will not review these grounds for the first time on appeal.

In his second and third assignments of error, petitioner argues that the circuit court erroneously adjudicated him as an abusing parent of all three children when (1) the evidence was insufficient to support a finding of abuse or neglect as to A.M. and T.M. and (2) there was no evidence of abuse or neglect of J.M.-2, who was also not found to be an abused child. Due to his failure to object to, or contest, his adjudications below, petitioner asks that we review these claims under the plain-error doctrine. We have explained that "[t]o trigger application of the 'plain[-]error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We have further explained that the plain-error doctrine is "to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. Pt. 4, in part, *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988) (internal citation omitted). In response, the DHHR argues that petitioner's stipulations and failure to object to, or contest, the adjudications constitutes invited error, and, thus, is not reviewable on appeal. We agree.

We have previously held that "'[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.' Syllabus Point 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410

---

[5]Unlike petitioner's second and third assignments of error (discussed below), petitioner does not seek plain-error review of any portion of his first assignment of error. Therefore, the finding that petitioner failed to object on these grounds ends our analysis.

[6]The only questions the circuit court asked petitioner at the June 23, 2014, hearing prior to his appointment of counsel were about his relationship with a woman (determined to be his girlfriend) who wished to remain in the courtroom for the hearing. Notably, petitioner initiated this conversation with the circuit court; petitioner interjected in a discussion between the circuit court and the bailiff about the girlfriend.

(1996)." Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W.Va. 213, 719 S.E.2d 381 (2011). Further,

> "[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

*Hopkins*, 228 W.Va. at 215, 719 S.E.2d at 383, Syl. Pt. 3. As a branch of the waiver doctrine, invited error generally prevents this Court from finding a deviation of the rule of law. *See* Syl. Pt. 8, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (holding that "[a] deviation from a rule of law is error unless there is a waiver."). "[W]hen there has been such a knowing waiver, there is no error and the inquiry as to the effect of the deviation from a rule of law [or violation of a right] need not be determined." *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. "When a right is waived, it is not reviewable even for plain error." *State v. Crabtree*, 198 W.Va. 620, 631, 482 S.E.2d 605, 616 (1996).

Having reviewed the parties' arguments and the record on appeal related to petitioner's second and third assignments of error, the Court finds that petitioner waived his claims regarding the adjudications underlying his termination of parental rights by stipulating and silently acquiescing to the same. Petitioner voluntarily stipulated to his adjudication as an abusing parent to A.M. and T.M., thus inviting the circuit court to adjudge him as an abusing parent to those children. Further, petitioner made no objection or challenge when the DHHR sought to have J.M.-2 adjudicated for abuse and neglect or when the circuit court adjudicated J.M.-2.[7] Simply put, petitioner admitted to the sufficiency of the allegations and evidence against him by stipulating his adjudication as an abusing parent of A.M. and T.M. in July of 2014 and by silently acquiescing to the adjudication of J.M.-2 in June of 2015. Petitioner raised no objection to either adjudication, nor did he challenge (or make his stipulation conditional upon a challenge to) the sufficiency of the allegations against him. Thus, petitioner's waiver prevents a finding of a deviation of the rule of law and prevents a finding of plain error. For those reasons, this Court finds no plain error in the circuit court's adjudications of the children as alleged in petitioner's second and third assignments of error.

---

[7]Petitioner argues that no written order was entered adjudicating J.M.-2 as an abused or neglected child, and, therefore, terminating petitioner's parental rights to J.M.-2 was reversible error. We disagree. In addition to the uncontested adjudication made on the record at the hearing in June of 2015, the circuit court's July 21, 2016, written order references its findings of abuse and neglect as to J.M.-2. Further, according to the docketing sheet, an order was entered on July 28, 2015, reflecting the circuit court's rulings at the hearing in June of 2015 wherein it adjudicated J.M.-2. However, petitioner failed to include the July 28, 2015, order in the appendix record, which renders the contents of that written order unknown to this Court. "Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syl. Pt. 2, in part, *W.Va. Dept. of Health & Human Res. Emps. Fed. Credit Union v. Tennant*, 215 W.Va. 387, 599 S.E.2d 810 (2004) (quoting Syl. Pt. 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)); *see also State v. Browning*, 199 W.Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record.").

Petitioner's final assignment of error is that the circuit court erred by restraining petitioner's contact with J.M.-2 and J.M.-2's mother. Petitioner acknowledges that Rule 36 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[t]he court also may include in the disposition order the following information: . . . restraining orders controlling the conduct of any party who is likely to frustrate the disposition order." However, petitioner argues that the circuit court's restraining order was unconstitutional and improper. The DHHR responds that the circuit court was within its discretion to enter the restraining order because petitioner and J.M.-2's mother had previously circumvented the circuit court's order regarding supervised visitation. Having reviewed the record on appeal, we find that petitioner failed to object at the final dispositional hearing to the DHHR's motion for a restraining order and to the circuit court's granting of the same. As noted above, we will not address a nonjurisdictional issue for the first time on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 21, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 16, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7