719 S.E.2d 381

**J.D. HOPKINS and David Hopkins, Defendants Below, Petitioners**

**v.**

**DC CHAPMAN VENTURES, INC., A West Virginia Corporation, Plaintiff Below, Respondent.**

**No. 101530.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 2011.

Decided Nov. 10, 2011.

Stephen E. Hastings, Esq., Hendrickson & Long, PLLC, Charleston, WV, for Petitioners.

Gregory W. Sproles, Esq., Breckinridge, Davis, Sproles & Chapman, PLLC, Summersville, WV, for Respondent.

PER CURIAM:

The petitioners, J.D. Hopkins and David Hopkins,[1] appeal from the July 9, 2010, order of the Circuit Court of Nicholas County, which ordered them to immediately cause a new survey to be performed on a tract of property to resolve a boundary line dispute between the petitioners and the respondent, DC Chapman Ventures, Inc. The petitioners seek a reversal of the circuit court's order and maintain that the court lacked jurisdiction when it altered its December 5, 2007, final order by entering the July 9, 2010, order. The petitioners also contend that the respondent waived any right to object to a survey of the disputed property done on December 2, 2009. Based upon the parties' briefs and arguments in this proceeding, a review of the entire record, and the relevant statutory and case law, the circuit court's July 9, 2010, order is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The issues herein arise out of a dispute concerning a boundary line between property owned by the petitioners, J.D. Hopkins and David Hopkins, and adjoining property owned by the respondent, DC Chapman Ventures, Inc.[2] On October 19, 2005, the respondent filed a complaint in the Circuit Court of Nicholas County alleging that the petitioners committed acts of ownership on property owned by the respondent resulting in a trespass. In response, the petitioners asserted that they did not trespass because they were the true owners of the property.

The petitioners also claimed that even if the circuit court found that the respondent owned the property in question, that the petitioners had acquired title to at least a portion of the disputed property through adverse possession, or alternatively, by prescriptive easement. According to the petition-

---

1. David Hopkins was dismissed as a defendant before trial; however, by deed dated May 20, 2010, J.D. Hopkins reconveyed the subject property to David Hopkins. Thus, David Hopkins is once again an interested party. J.D. Hopkins also remains a party as he was ordered by the circuit court to have a post-trial survey performed.

2. In 1965, petitioner J.D. Hopkins purchased a twenty-four-acre tract of property, part of which serves as a location for a motel business. At the time of the filing of the complaint, the respondent was a lessee of property adjoining the eastern boundaries of the petitioners' property. The respondent exercised its right to purchase the property from the lessor, Judith Young, on November 17, 2006. Ms. Young is not a party to this lawsuit.

ers, they constructed a building, referred to as the "40s Building,"[3] on the property in 1985 as an expansion of their existing motel business because they believed they were the true owners of the property. They stated that for more than ten years they had continuously used and maintained the 40s Building as well as an area around the building. The petitioners' main motel structure is separate from the 40s Building and is not located on the property that is the subject of this litigation.

Each party obtained surveys of their respective properties. However, the surveys were in disagreement regarding the location of the boundary line between the properties. The petitioners ultimately chose Kevin D. Schafer[4] to complete their survey, while the respondent hired Craig Dunlap to perform a survey. Thereafter, in September and October of 2007, the circuit court conducted a five-day bench trial that included a view of the disputed property and relevant landmarks. On December 5, 2007, the circuit court entered an order finding that the survey of the respondent's tract, performed by Mr. Dunlap, most accurately represented the disputed boundary line.[5] Conversely, the circuit court found that the survey of the petitioners' tract, performed by Mr. Schafer, did not accurately represent the boundary of the disputed property line.[6] The circuit court further found that the petitioners had adversely possessed a portion of the property located within the area known as the "Encroachment Tract," as shown on the Dunlap survey, and ordered the petitioners to obtain a new survey to reflect its findings.

On December 17, 2007, the petitioners filed a motion for a new trial or, in the alternative, a motion to alter or amend judgment or make additional findings of fact. On February 19, 2008, a hearing was held on the motion. On May 19, 2008, the circuit court granted a motion for clarification and adopted its rationale from the February 19, 2008, hearing. The circuit court ordered:

> Defendant's Motion for Clarification of Order is GRANTED and, by way of further clarification, the Court FINDS that the subject boundary line segment is contained within the encroachment area which is generally reflected on the attached partial blowup of Plaintiff's Exhibit 1 which is attached to this Order as Exhibit A and described more specifically in the transcript of the February 19, 2008 proceedings herein, the original of which is contained within the Court file of this matter.

The circuit court further held:

> The Court does hereby further Order that any additional Findings of Fact and Conclusions of Law are contained more specifically in the transcript of the February 19, 2008 proceedings herein.

Subsequently, the petitioners filed an appeal with this Court, which was refused on February 26, 2009. The petitioners then filed a petition for a writ of certiorari asking the

---

**3.** It is commonly referred to as the 40s Building because it contains motel rooms numbered in the 40s.

**4.** According to the circuit court's December 5, 2007, order, the petitioners first requested Wayne Acord to complete a survey of the property in question in 1999; however, after receiving Mr. Acord's preliminary findings, the petitioners did not request that he complete the survey. In 2006, the petitioners then caused Marshall Robinson to complete a survey on the same property, but did not agree with his findings. Thereafter, in 2007, the petitioners chose Mr. Schafer to complete their survey.

**5.** The circuit court also noted that Mr. Dunlap's survey was in agreement with Mr. Acord's preliminary survey findings. *See* note 4, *supra*.

**6.** The circuit court explained:

Next, Mr. Schafer's testimony indicated that he did not adjust for any secular change, despite his own testimony that a one degree adjustment is typically required for every 20 years that passes. Further, Mr. Schafer testified that he identified and followed the present-day "meanderings" of the north edge of Duffy Lane to its intersection with Route 41, without relying on any evidence of the road's alterations or the courses and distances along Duffy Lane as called for in the 1934 Snodgrass Deed. In fact, Mr. Schafer testified that he did not investigate whether there had been any changes to Duffy Lane. In addition, Mr. Schafer testified that he placed no significance on the monuments located on the boundaries of the Taylor tracts. Further, Mr. Schafer testified that he significantly relied on a 1924 Department of Highways Map. However, maps such as this one are inconclusive indicators of roads and their surrounding objects because they were designed simply for making road plans, which could have been altered after the map was made.

Supreme Court of the United States to review the case, but that petition was also refused.

Thereafter, on December 2, 2009, after the appellate process had ended, the petitioners' surveyor, Mr. Schafer, completed the required survey of the property pursuant to the December 5, 2007, circuit court order. The respondent disagreed with Mr. Schafer's survey and on March 31, 2010, filed a motion to compel the petitioners to perform an accurate survey. The respondent asserted that the survey identified the entire encroachment tract as the adversely possessed property and substantially expanded the area which the circuit court found that the petitioners were entitled to possess.

On May 3, 2010, the circuit court held a hearing on the motion. On July 9, 2010, the circuit court entered an order finding that the Schafer survey did not accurately reflect the court's findings of the area to which the petitioners were entitled to occupy by virtue of adverse possession as set forth in the December 5, 2007, order, and subsequent orders and hearings by the court. The circuit court then directed the petitioners to cause a new survey to be performed. This appeal followed.

## II.

### STANDARD OF REVIEW

As noted above, the petitioners contend that the circuit court lacked proper

jurisdiction to alter its December 5, 2007, final order, and that the respondents waived their arguments below surrounding the petitioners' survey. "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syllabus Point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, the parties' arguments will be considered.

## III.

### DISCUSSION

#### A. Jurisdiction

The petitioners first contend that the circuit court did not have jurisdiction to alter its December 5, 2007, order, through its July 9, 2010, order. The petitioners maintain that to modify the December 5, 2007, order, the circuit court had to do so pursuant to Rule 59(e),[7] Rule 60(a),[8] or Rule 60(b)[9] of the West Virginia Rules of Civil Procedure. The

---

7. W.Va.R.Civ.Pro. Rule 59(e) provides:

 Motion to alter or amend a judgment.—Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment.

8. W.Va.R.Civ.Pro. Rule 60(a) provides:

 Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court. The petitioners argue that Rule 60(a) provides no authority to modify even a clerical error, let alone the substantive error at issue, after the appeal process ended. The petitioners are incor-

rect regarding their analysis of Rule 60(a). *See* note 12.

9. W.Va.R.Civ.Pro. Rule 60(b) provides:

 Mistakes; Inadvertence; Excusable Neglect; Unavoidable Cause; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

petitioners assert, however, that the requirements for application of any of these rules were not satisfied. The petitioners also argue that a court cannot modify its final judgment after the adjournment of the term at which it was rendered. Thus, the petitioners reason that the circuit court abused its discretion by modifying its December 5, 2007, order, more than two years later on July 9, 2010, and changing the description of the adversely possessed property.

Conversely, the respondent contends that the petitioners' argument is flawed from the outset due to the fact that the circuit court did not amend, modify, or change its December 5, 2007, order. The respondent states that in its December 5, 2007, order the circuit court found that the petitioners were entitled to occupy an area of ten feet surrounding the 40s building and a small area extending from the point which is ten feet to the right of that building. The respondent maintains that the petitioners were attempting to expand the area which the circuit court found they were entitled to occupy as a result of adverse possession. Therefore, the respondent says that the circuit court's July 9, 2010, order merely clarified its December 5, 2007, order by giving a more detailed description of the area that it concluded had been adversely possessed by the petitioners.

■ After thoroughly reviewing the entire record in this case, it is clear that the circuit

court did not alter the findings of fact and conclusions of law set forth in its December 5, 2007, order in any manner. The circuit court merely rejected the petitioners' survey because it did not comport with its December 5, 2007, and May 19, 2008, orders, or with the court's findings at the February 19, 2008, and May 3, 2010, hearings on the matter. The location of the boundary had been discussed extensively during the circuit court's prior hearings and orders and the court's findings were consistent at each and every point.[10] Moreover, the record shows that the petitioners asked the circuit court for a more specific order at the May 3, 2010, hearing. During that hearing, the petitioners' counsel stated:

> This proposed plat of the survey by Kevin Schafer is what the Court ordered us to do based upon the language as interpreted by Mr. Schafer
>
> If the Court is going to do something different, I need something more specific with angles and lengths so, if we have to do another survey, I want it to be what the Court's order is.

The circuit court acquiesced to the petitioners' request for more specificity and in its July 9, 2010, order, the court provided an additional paragraph describing the adversely possessed property. The circuit court did so in a manner that was consistent with its

---

prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

10. For instance, after the entry of the December 5, 2007, order, the petitioners filed a motion to alter or amend judgment and asked the circuit

court to make additional findings of fact surrounding the boundary line. The circuit court granted the petitioners' request and addressed their concerns at the February 19, 2008, hearing. During the hearing, the circuit court indicated on nine separate occasions that it intended to grant to the petitioners the right to occupy an area of ten feet around the 40s building. The circuit court explained that this is precisely what it intended to do in its December 5, 2007, order, but clarified its prior order to avoid further confusion. Then, through its May 19, 2008, order, the circuit court reaffirmed its prior order and adopted its rationale from the February 19, 2008, hearing. After the circuit court entered this order, the petitioners filed unsuccessful petitions with this Court and with the Supreme Court of the United States. It was then that the petitioners completed their survey, a survey that the circuit court found to be inconsistent with its prior orders and hearings.

prior orders and hearings and explained that it was its

> intent, in its Order Following Bench Trial [the December 5, 2007, order], to establish the area surrounding the building known as the "40s" building, to which the [petitioner] is entitled by virtue of adverse possession, to be a perimeter of ten feet (10') surrounding such building and a contiguous second area, the outer boundary of this second area beginning at point ten feet (10') to the east of the front right corner of the 40s building, as one faces the 40s building, and runs in a straight line to a rebar, the rebar being located 26.19 feet, generally in a northwestern direction, from the corner of the tract owned by Ben and Freda Taylor as depicted on the Dunlap survey [ ] and on the line depicted on the Dunlap Survey [ ] with a bearing of N 36° 24' 24' W"

Despite the fact that the petitioners requested the additional specificity, the petitioners now claim that the circuit court did not have the jurisdiction to clarify its order dated December 5, 2007.

 It is well-established law in this state that "[a] party cannot invite the court to commit an error, and then complain of it." *Lambert v. Goodman*, 147 W.Va. 513, 519, 129 S.E.2d 138, 142 (1963). In Syllabus Point 1 of *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996), this Court explained that: "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." [11] Likewise, this Court has held that "A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds by Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001). *Accord* Syllabus Point 4, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996). Moreover:

"Invited error" is a cardinal rule of appellate review applied to a wide range of conduct. It is a branch of the doctrine of waiver which prevents a party from inducing an inappropriate or erroneous response and then later seeking to profit from that error. The idea of invited error is not to make the evidence admissible but to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences. *State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996). *See also Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) ("[T]he appellant cannot benefit from the consequences of error it invited."); *In re Tiffany Marie S.*, 196 W.Va. 223, 233, 470 S.E.2d 177, 187 (1996) ("[W]e regularly turn a deaf ear to error that was invited by the complaining party."); *Comer v. Ritter Lumber Co.*, 59 W.Va. 688, 689, 53 S.E. 906, 907 (1906) (the party inviting "the error … must accept its results"); Syllabus Point 1, *McElhinny v. Minor*, 91 W.Va. 755, 114 S.E. 147 (1922) ("appellant cannot complain of errors … which he alone caused"); *Smith v. Bechtold*, 190 W.Va. 315, 438 S.E.2d 347 (1993) ("invited error" when appellant moved for the very delay that was the subject of the appeal); Syllabus Point 2, *Young v. Young*, 194 W.Va. 405, 460 S.E.2d 651 (1995) ("A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal."); Syllabus Point 2, *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971) ("An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited….").

Given all the above, this Court finds no reversible error. At no time during the proceedings below did the petitioners voice any objection to the circuit court providing further clarification of its prior orders. To the contrary, it was the petitioners who vigorous-

---

11. *See also State v. Swims*, 212 W.Va. 263, 569 S.E.2d 784 (2002) (applying principles from Syllabus Point 1 of *Maples* ); *State v. Carey*, 210 W.Va. 651, 558 S.E.2d 650 (2001) (same); *State v. McIntosh*, 207 W.Va. 561, 534 S.E.2d 757 (2000) (same).

ly and successfully sought more specificity in the circuit court's order. Therefore, any error that may have occurred was "invited." Consequently, the petitioners waived any right to claim that the circuit court lacked jurisdiction when it entered the July 9, 2010, order.[12]

### B. Waiver

■ Next, the petitioners contend that the circuit court erred by entering the July 9, 2010, order because the respondent had waived any right to object to the December 2, 2009, survey. The petitioners state that during their first appeal to this Court, which was denied on February 26, 2009, as well as during their subsequent filing of a writ of certiorari in the Supreme Court of the United States, which was also denied, they made arguments regarding the location of the boundary line of the adversely possessed property. Specifically, the petitioners maintained during those appeals that they

> adversely possessed [the] area to the right of the Forties Building, [and] that holding should not be limited to the oddly shaped Encroachment Tract created by [respondent's] expert in 2005. Instead, the finding should extend to the entire area used for the [petitioners'] business since 1985, that property naturally bounded by the stream and tree line as explained by the [petitioners'] family and supported by the objective evidence.

The petitioners now contend that because the respondent did not refute their interpretation of the adversely possessed area as they had presented it in their briefs during their unsuccessful prior appeals, the respondent waived its right to contest the December 2, 2009, survey. Said another way, even though the petitioners had not completed the survey, they argue that their interpretation of the property boundary line was made known to the respondent through their prior appellate briefs, and that it was the respondent's burden to contest that interpretation prior to the petitioners' actual completion of the survey.

Conversely, the respondent contends that it did not waive any argument regarding the adversely possessed area. The respondent points out that the issue of the exact area which constituted the adversely possessed property was not raised in the petitioners' prior appeals. Rather, it was not until the May 3, 2010, hearing, in response to the respondent's motion to compel the petitioners to perform an accurate survey, that the petitioners asserted that the area they adversely possessed was the entirety of the encroachment tract. At that time, the respondent objected because it believed that the petitioners' survey was inconsistent with the circuit court's previous orders and hearings.

■ This Court has consistently held that "silence may operate as a waiver of objections to error and irregularities[.]" *State v. Grimmer*, 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979), *overruled on other grounds by State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). This "raise or waive rule" is designed "to prevent a party from obtaining an unfair advantage by failing to give [a] court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W.Va. 660, 663, 379 S.E.2d

12. Although the petitioners cite various rules of civil procedure, none of those rules apply to the matter at hand because the circuit court did not modify, amend, or change the findings of fact or conclusions of law of its prior order, but instead, clarified its ruling at the request of the petitioners. Nonetheless, even though we have found that the circuit court did not change the meaning of its prior orders, the circuit court could have "corrected" its prior orders had such errors been present. In *Kester v. Small*, 217 W.Va. 371, 377, 618 S.E.2d 380, 386 (2005), this Court affirmed the circuit court which corrected an order under Rule 60(a) that was nearly seventy years old. In Syllabus Point 2 of *Kester*, this Court held:

A circuit court may exercise its discretion, pursuant to Rule 60(a) of the West Virginia Rules

of Civil Procedure, to correct oversights and omissions in prior orders so as to give effect to the original intent of the prior order. In determining the original intent of the prior order, actions of the original parties (and their successors in interest) are relevant factors to be considered. Substantial weight should be afforded to actions of the original parties (and their successors in interest) which are consistent with the alleged intent of the prior order.

In footnote 9 of *Kester*, this Court further observed: "We likewise reject Appellant's argument that the circuit court has no authority to correct an order issued nearly seventy years ago."

383, 386 (1989). The "raise or waive rule" also "prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)." *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996).

In this case, the "raise or waive rule" does not apply. The facts are clear that the respondent did not challenge the circuit court's December 5, 2007, final order. Rather, the respondent objected to the December 2, 2009, survey because it did not comport with the findings made by the circuit court in the December 5, 2007, and May 19, 2009, orders, and findings made at the February 19, 2008, and May 3, 2010, hearings. Moreover, as discussed previously, the December 2, 2009, survey was not completed by the petitioners until *after* the first appellate process had ended following the petitioners' unsuccessful petitions to this Court and to the Supreme Court of the United States. It was only then that the petitioners completed the survey. As such, it was impossible for the respondent to object to the survey during the prior appellate process because the survey had not yet been completed by the petitioners. Thus, the petitioners' argument that the respondent waived its ability to contest the survey is without merit.

## IV.

## CONCLUSION

Accordingly, the final order of the Circuit Court of Nicholas County dated July 9, 2010, is affirmed.

Affirmed.