# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Lawrence Williamson,**
**Petitioner, Defendant below**

**FILED**
**November 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 14-0792** (Kanawha County 11-C-829)

**Patrick Morrisey, West Virginia Attorney General,**
**Respondent, Plaintiff below**

## MEMORANDUM DECISION

Petitioner Lawrence W. Williamson appeals the Circuit Court of Kanawha County's July 15, 2014, order wherein the court concluded that he violated West Virginia Code § 46A-6-104 (1974) of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and imposed a civil penalty. Respondent Patrick Morrisey, the West Virginia Attorney General ("AG"), argues in support of the circuit court's order.[1]

After considering the parties' written and oral arguments, as well as the appendix record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I. Factual and Procedural Background

In 2011, the AG[2] filed suit against Mr. Williamson, Morgan Drexen, Inc. ("Morgan Drexen"), and other defendants alleging that the defendants were engaged in illegal and misleading

---

[1] On brief, Mr. Williamson was represented by attorneys Bruce M. Jacobs, Alexander Macia, Dennise R. Smith, and Nicholas P. Mooney II. Those attorneys subsequently withdrew, and Mr. Williamson represented himself during oral argument. The AG was represented by Assistant Attorney General Douglas L. Davis.

[2] When the lawsuit was filed, Darrell V. McGraw, Jr. was the Attorney General. During the pendency of the litigation, Patrick Morrisey was elected the attorney general. Accordingly, we have substituted Attorney General Morrisey as the named party for this appeal. *See* W. Va. R. App. P. 41(c) (2010) (providing for automatic substitution of public official who is party in official capacity).

debt settlement practices involving West Virginia consumers. The AG alleged, *inter alia*, that Morgan Drexen, a California for-profit corporation comprised of non-lawyers that was not authorized to do business in West Virginia, was operating a debt pooling and debt settlement program in this state. The AG alleged that Morgan Drexen was misrepresenting this program as being operated by attorneys when, in fact, Morgan Drexen's non-lawyer employees were making all of the decisions and doing all of the work. The AG alleged that Morgan Drexen entered into agreements with various lawyers, including Mr. Williamson, who was a Kansas-licensed attorney, in order to "hide" behind their law licenses and avoid various state regulations. The civil suit asserted several violations of state consumer protection law. Morgan Drexen and Mr. Williamson denied the allegations and asserted that Morgan Drexen was only providing contract paralegal and support work for attorneys, that local West Virginia counsel was retained for West Virginia clients, and that there was no illegal conduct.

The circuit court held a bench trial on September 7, 2011. Testimony was given by two West Virginia residents who filed consumer protection complaints with the AG in this matter, Mary Linville and Brenda Martin. The court also heard testimony from Mr. Williamson, Morgan Drexen's Chief Financial Officer David Walker, and a West Virginia lawyer, Rachelle McIntyre-Nicholson, who was hired in August 2009 to serve as local counsel for the debt settlement program.

Ms. Linville testified that she owed a large amount of unsecured debt when Morgan Drexen contacted her by telephone and offered to negotiate and settle her debts for less than she owed. She agreed to participate in the program in March 2008 and was charged an engagement fee plus a monthly fee. Morgan Drexen sent Ms. Linville several documents, including a "Disclosure Statement" and a "Debt Schedule" discussing how long it would take to clear Ms. Linville's debt with Morgan Drexen's assistance, that listed Morgan Drexen's and Ms. Linville's respective responsibilities in the program, and that instructed Ms. Linville to complete the required documentation on Morgan Drexen's website. Another document allowed Morgan Drexen to access Ms. Linville's bank account. Some of the documents that Morgan Drexen sent to Ms. Linville indicated that she would be represented by Mr. Williamson's law firm. One of these documents was a "Williamson Law Firm Unsecured Debt Negotiation/Settlement Attorney/Client Fee Agreement" that informed her she was a client of the Williamson Law Firm and that the firm was responsible for "approving negotiations and/or settling [her] unsecured debt on [her] behalf[.]" According to Ms. Linville's testimony, she was told that she was the Williamson firm's client for purposes of debt negotiation and settlement. Thereafter, she was sued by a creditor and Morgan Drexen sent her a letter bearing the Williamson Law Firm's name and letterhead; this letter acknowledged the lawsuit and advised that the Williamson Law Firm's scope of representation for the lawsuit would be limited. This letter incorrectly stated that the Williamson Law Firm was authorized to practice law in West Virginia when, in fact, Mr. Williamson has never been licensed in this state. Along with this letter was an "Agreement and Authorization for Limited Scope of Representation" that stated the Williamson Law Firm agreed to provide her with limited

representation in the lawsuit by and through a lawyer licensed in West Virginia. After eight or nine months, Ms. Linville quit participating in the debt settlement program.

Ms. Martin, who also had a large amount of unsecured debt, began participating in the debt settlement program in March or April 2010 after she saw a Morgan Drexen advertisement on television that talked about "getting out of debt in half the time." She paid an engagement fee plus monthly payments. Morgan Drexen sent her several documents including a "Disclosure Statement" that the circuit court found was the same as the document sent to Ms. Linville, except it was labeled as having come from the Williamson Law Firm instead of from Morgan Drexen. Morgan Drexen also provided Ms. Martin with a "Williamson Law Firm Unsecured Debt Negotiation/Settlement Attorney/Client Fee Agreement" that was the same as had been sent to Ms. Linville. There was also a "Debt Schedule" document similar to that sent to Ms. Linville, except Ms. Linville's document authorized Morgan Drexen to negotiate her debts, while Ms. Martin's document authorized the Williamson Law Firm to negotiate her debts. Ms. Martin was required to sign an authorization for the Williamson Law Firm to access her bank account, although it is undisputed that Morgan Drexen employees effectuated the banking transactions. Ms. Martin quit the program after four or five months because she was receiving telephone calls from creditors.

Mr. Williamson testified that the debt settlement program had about 245 clients in West Virginia. Mr. Williamson admitted that he did not review "all the documents" nor did he negotiate with any of the clients' creditors himself. Rather, each client received similar documents and forms through Morgan Drexen's automated system, and Morgan Drexen's employees handled the documents and the debt settlement negotiations. Mr. Williamson testified that arrangements were made with a California law firm, Howard Nassiri, to hire a West Virginia attorney to review the proposed settlements negotiated by the Morgan Drexen "paralegals" for the clients. In an affidavit, Mr. Williamson stated that it was West Virginia counsel Ms. McIntyre-Nicholson—and not him—who reviewed the proposed settlement offers. In addition, although Mr. Williamson testified that he substantially altered or edited the documents that had previously been prepared by Morgan Drexen, the circuit court found this testimony to lack credibility; the court compared the documents and found them to be the same. Finally, Mr. Williamson testified that the letter to Ms. Linville incorrectly advising that he was authorized to practice law in West Virginia was simply a mistake by one of the employees at Morgan Drexen.

The West Virginia lawyer, Ms. McIntyre-Nicholson, testified that she was hired through the Howard Nassiri law firm in August of 2009. She entered into written agreements with Howard Nassiri and Morgan Drexen. Her contracts provided that she would receive e-mails with proposed debt settlements that Morgan Drexen employees had negotiated for West Virginia clients, and she would review the proposals and click either "accept" or "reject." If she rejected the proposal, she was required to advise Morgan Drexen of the "perceived inadequacy" of the settlement. Ms. McIntyre-Nicholson's maximum fees for this work were dictated by her contract with Morgan

Drexen. Ms. McIntyre-Nicholson explained that she began this work in August of 2009, but she did not have contact with any clients or creditors until December 2010. Although Ms. McIntyre-Nicholson represented that she was serving as local counsel for Mr. Williamson, they did not have an agreement with one another. The circuit court found that Ms. McIntyre-Nicholson and Mr. Williamson did not communicate with one another until after the AG initiated his investigation into this matter.

Mr. Walker, the Morgan Drexen official, confirmed that there were 245 debt settlement program participants in West Virginia, but he denied that they were the clients of Morgan Drexen. He asserted that they were the clients of the attorneys, and that Morgan Drexen merely provided support services to the attorneys.

In a seventy-page "Final Order" entered on July 15, 2014, the circuit court rejected many of the defendants' factual and legal assertions. The circuit court found that Morgan Drexen was operating the debt settlement program, did the bulk of the settlement work, and "dictated and controlled" any interaction between the clients and the lawyers, while misrepresenting that "lawyers will provide debt relief services to consumers." The circuit court found "it is evident that Morgan Drexen hides behind attorneys who perform or complete little to no work, exert little to no control over Morgan Drexen, and play little to no role in Morgan Drexen's debt settlement negotiations." The circuit court opined that "the Defendants' operations amount to a ruse perpetrated by Morgan Drexen."

With respect to Mr. Williamson, the circuit court found that the AG proved count six of its Complaint that alleged a violation of West Virginia Code § 46A-6-104 of the WVCCPA. This statute states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* West Virginia Code § 46A-6-102(7) (2005) defines unfair or deceptive acts or practices, in relevant part, as follows:

> (7) "Unfair methods of competition and unfair or deceptive acts or practices" means and includes, but is not limited to, any one or more of the following:
> . . .
> (I) Advertising goods or services with intent not to sell them as advertised;
> . . .
> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; [or]
> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods

4

> or services, whether or not any person has in fact been misled, deceived or damaged thereby[.]

The circuit court found that although documents provided to West Virginia consumers indicated that Mr. Williamson's law firm would be negotiating settlements of their debts, in actuality, "Mr. Williamson provide[d] no services to West Virginia consumers." The circuit court found that the attorneys involved in this matter "perform or complete little to no work and exert little to no control over Morgan Drexen. Morgan Drexen, in turn, attempts to legitimize its services by advertising that attorneys perform debt settlement services and negotiations." Furthermore, although several of the documents sent to Ms. Linville and Ms. Martin were on letterhead for the "Williamson Law Firm," the circuit court found that most if not all were templates created by Morgan Drexen. The documents also failed to disclose that Mr. Williamson was not licensed to practice law in West Virginia; to the contrary, one letter sent to Ms. Linville incorrectly stated that he was licensed. Based on all of the evidence, the circuit court concluded that

> Mr. Williamson creates the likelihood of confusion or of misunderstanding by representing to consumers that his law firm will provide services when it does not in violation of W. Va. Code § 46A-6-104. Mr. Williamson has deceived consumers by representing that his law firm will provide legal services to consumers in West Virginia when it does not.

West Virginia Code § 46A-7-111(2) (1999) permits a court to impose a $5,000 civil penalty for each violation of the WVCCPA:

> The attorney general may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating this chapter, and if the court finds that the defendant has engaged in a course of repeated and willful violations of this chapter, it may assess a civil penalty of no more than five thousand dollars for each violation of this chapter. No civil penalty pursuant to this subsection may be imposed for violations of this chapter occurring more than four years before the action is brought.

The circuit court found that Morgan Drexen's debt settlement program had 245 clients in West Virginia. Multiplying $5,000 by 245, the circuit court imposed a $1,225,000 penalty on Mr. Williamson.[3]

---

[3] The circuit court also found Morgan Drexen liable for multiple counts of the AG's Complaint. Specifically, the circuit court found that Morgan Drexen committed willful and repeated violations of the WVCCPA by failing to clearly disclose that it provides all of the debt relief services, by misrepresenting that lawyers would be providing these services, by not

Morgan Drexen and Mr. Williamson filed separate notices of appeal to this Court in August 2014. Subsequently, their appeals were consolidated and they filed a joint petitioners' brief. After all briefing was completed but before the appeal could be decided, the appeal was stayed on May 28, 2015, because Morgan Drexen filed for bankruptcy. The stay was lifted and the consolidated appeal was returned to this Court's active docket on July 22, 2019. On July 20, 2020, Morgan Drexen moved to withdraw its appeal; this motion was granted on August 27, 2020. Accordingly, only Mr. Williamson's appeal was orally argued before this Court on October 27, 2020.

## II. Standard of Review

Now that Morgan Drexen's appeal has been withdrawn, the remaining question presented for this Court's consideration is whether the circuit court erroneously concluded that Mr. Williamson violated West Virginia Code § 46A-6-104 by deceiving and misrepresenting to West Virginia consumers that his law firm would provide services when it did not do so. The circuit court's order was entered following a bench trial, thus we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

disclosing its lack of a West Virginia business license, by failing to clearly disclose that no services would be rendered until a client paid the entire engagement fee, and by failing to clearly disclose the potential adverse credit consequences for participating in debt settlement. *See* W. Va. Code §§ 46A-6-102(7), 46A-6-104. The circuit court also found that Morgan Drexen was providing debt pooling services while charging fees in excess of what non-lawyers may charge for these services pursuant to West Virginia Code § 61-10-23 (1971). In addition, the circuit court found that Morgan Drexen violated the West Virginia Credit Services Organizations Act by failing to register in this state and by purporting to improve a client's credit without explaining that this can be done only if the client's credit history was inaccurate or obsolete. *See* W. Va. Code § 46A-6C-5 (2001). Furthermore, the circuit court found that Morgan Drexen violated the West Virginia Telemarketing Act when it made or authorized unsolicited telephone calls to consumers, failed to post a surety bond and register with the West Virginia Tax Department, and represented that it would remove derogatory information from a person's credit history. *See* W. Va. Code § 46A-6F-112 (1998). The circuit court imposed a civil penalty on Morgan Drexen of $8,575,500. Because Morgan Drexen has chosen not to pursue an appeal to this Court, we will only address the circuit court's finding of liability with respect to Mr. Williamson.

6

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). With regard to the clearly erroneous standard for evaluating a circuit court's findings of fact, we have held that

> [a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With this in mind, we turn to the parties' arguments.

### III. Discussion

On appeal, Mr. Williamson argues that the circuit court erred when finding that he did no work on negotiating and settling the outstanding debts for the West Virginia consumers who participated in this debt settlement program. He admits that he did not review the participants' documents and he did not negotiate with their creditors, but he asserts that his "paralegals" at Morgan Drexen did the negotiating on his behalf and that local counsel Ms. McIntyre-Nicholson reviewed the proposed settlements. He also argues that he revised and re-wrote Morgan Drexen's forms. The AG responds that Mr. Williamson is challenging the circuit court's factual findings, but these findings are well-supported by the evidence in the record. Having reviewed this matter, we find no clear error in the circuit court's factual finding that Mr. Williamson did not provide any legal services to the West Virginia program participants.

After hearing the testimony and reviewing the documentary evidence, the circuit court rejected Mr. Williamson's factual assertions. The circuit court found that it was Morgan Drexen's employees who were providing the services and exercising the control over the work. Although Mr. Williamson testified that he revised and re-wrote Morgan Drexen's forms, the circuit court specifically found this testimony to lack credibility. The circuit court reviewed the documents and found that the forms Morgan Drexen sent to clients before Mr. Williamson became involved were the same as the forms Morgan Drexen sent after Mr. Williamson purportedly did his re-drafting. The only difference was that the subsequent documents were on Williamson Law Firm letterhead.

When rejecting Mr. Williamson's argument that he relied upon local counsel to do his work, the circuit court observed that Mr. Williamson and Ms. McIntyre-Nicholson had no agreement with one another and had never even spoken or corresponded with one another until

after the AG began this investigation. Ms. McIntyre-Nicholson's employment contracts were with the Howard Nassiri firm and Morgan Drexen. Furthermore, the circuit court noted that Ms. McIntyre-Nicholson did not begin her involvement with the debt settlement program until August of 2009, which is after Ms. Linville participated in the program, and Ms. McIntyre-Nicholson admitted that she did not perform any of the debt settlement negotiations.

The circuit court was the trier of fact in this matter; it reviewed the evidence, heard the testimony, and made credibility determinations. We have long recognized that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997); *accord State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). The circuit court's findings of fact in this case are plausible and supported by the record, and we have no basis to overturn them on appeal. *See Tiffany Marie S.*, 196 W. Va. at 226, 470 S.E.2d at 180, syl. pt. 1.[4]

Next, Mr. Williamson argues that it was plain error for the circuit court to have imposed the civil penalty upon him personally when all of the documents provided to program participants listed his law firm, the Williamson Law Firm, LLC, as the responsible entity. He argues that his law firm is a limited liability company, but the circuit court failed to address whether the corporate veil should be pierced. The AG contends that piercing the corporate veil is not required when the matter involves a legal corporation and the provision of legal services.

Mr. Williamson raises the corporate veil issue as plain error. In other words, he acknowledges that he failed to raise the issue in circuit court. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In *Miller*, the Court explained that "[h]istorically, the 'plain error' doctrine 'authorizes [an appellate court] to correct only "particularly egregious errors" . . . that "seriously affect the fairness, integrity or public reputation

---

[4] During oral argument, Mr. Williamson focused some of his argument on the circuit court's finding that one letter sent to Ms. Linville incorrectly stated that he was licensed to practice law in West Virginia. He argued that this was simply an isolated mistake made by a Morgan Drexen employee. However, Mr. Williamson's argument ignores that the circuit court did not rely solely upon that one letter. The circuit court relied upon multiple documents that falsely promised Mr. Williamson's firm would provide debt settlement negotiation work for the program participants, and which failed to advise that Mr. Williamson was not licensed to practice law in West Virginia.

of judicial proceedings[.]"'" *Id.* at 18, 459 S.E.2d at 129 (quoting *United States v. Young*, 470 U.S. 1 (1985)). Even in the context of criminal law, where a person's liberty interest is at stake, this Court has held that the plain error "doctrine is to be used sparingly and only in those circumstances where substantial rights are affected, or the truth-finding process is substantially impaired, or a miscarriage of justice would otherwise result." Syl. Pt. 4, in part, *State v. England*, 180 W. Va. 342, 376 S.E.2d 548 (1988).

Mr. Williamson, and not his law firm, was the named defendant in the AG's lawsuit. By failing to raise in circuit court his argument about the need to pierce a corporate veil, Mr. Williamson waived the issue. "This Court has consistently held that 'silence may operate as a waiver of objections to error and irregularities[.]'" *Hopkins v. DC Chapman Ventures, Inc.*, 228 W. Va. 213, 220, 719 S.E.2d 381, 388 (2011) (citations omitted). We conclude that this alleged error is not plain, nor does not it seriously affect the fairness, integrity, or public reputation of the judicial proceeding; therefore we decline to address it under a plain error analysis. *See Miller*, 194 W. Va. at 7, 459 S.E.2d at 118, syl. pt. 7. Having determined that this issue was waived, it is unnecessary for us to address the parties' substantive arguments surrounding piercing the corporate veil of legal corporations.

Having reviewed this case and considered the parties' arguments on appeal, we find no basis upon which to reverse the circuit court's rulings with regard to Mr. Williamson. Mr. Williamson's acts of allowing Morgan Drexen to use his name, and of allowing Morgan Drexen to falsely promise that Mr. Williamson's law firm would be handling the debt settlement work for the program participants, constituted a deception in violation of the WVCCPA. For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison