# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.B. and N.U.**

**No. 20-0438** (Wood County 17-JA-254 and 17-JA-255)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.B., by counsel Ryan M. Ruth, appeals the Circuit Court of Wood County's March 6, 2020, order terminating her custodial rights to K.B. and N.U.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Katrina M. Christ, filed a response on behalf of the children in support of the circuit court's order. Respondent Father E.U., by counsel Heather Starcher, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in accepting her voluntary relinquishment of her custodial rights without requiring that it be reduced to writing or placing her under oath to determine if she was free from duress and fraud.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). We further note that petitioner's counsel filed the instant appeal pursuant to Rule 10(c)(10)(b) of the Rules of Appellate Procedure.

[2]Petitioner raises a second assignment of error in regard to the circuit court's transfer of custody of the children to the father after the DHHR abandoned its allegations against him. However, in her brief on appeal petitioner fails to cite any legal authority in support of this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented . . . and citing the authorities relied on*, under headings that correspond with the assignments of error." (Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as

(continued . . .)

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The history of the proceedings below is protracted, as the DHHR filed its initial petition in September of 2017. Without belaboring the specifics of that petition, it is sufficient to say that it was predicated upon allegations by petitioner that child K.B. made disclosures about physical and sexual abuse in the father's home, in addition to K.B. making similar disclosures during a forensic interview. However, what is critically important to the instant appeal—and a fact that petitioner does not dispute—is that the DHHR later determined that child K.B. recanted the allegations against the father and consistently indicated during her therapy sessions that petitioner forced her to make the false disclosures. The record shows that the child's therapist corroborated the child's recantation, noting that K.B. never disclosed sexual abuse or touching of any kind by anyone during their therapy sessions. Moreover, the therapist indicated that K.B. expressed emotional duress when discussing petitioner directing her to "say something bad about daddy"; displayed anxiety over living with petitioner; and, importantly, did not exhibit behavioral problems, engage in inappropriate sexualized verbalizations or physical touching, or display more sexual knowledge than was appropriate for her age, which are all common indicators of sexual abuse. Based on the DHHR's thorough investigation into the claims of the child's alleged physical and sexual abuse and the child's continued treatment with a psychologist, the DHHR officially abandoned its petition against the father, who was never adjudicated of any abuse and/or neglect. After the DHHR made its position known, the circuit court transferred custody of the children to the father.

In regard to petitioner, the DHHR informed the court in January of 2018 that it would file an amended petition to pursue allegations against her. That same month, the DHHR filed its amended petition alleging that petitioner emotionally abused the children by coaching them to make disclosures of abuse and neglect against the father. The petition further alleged that petitioner suffered from untreated mental illness that rendered her unable to provide the children with adequate care. According to the petition, the parents had competing active domestic violence protective orders against one another, but the children were not in either parent's custody at the time the conduct underlying those petitions occurred. The father's protective order was based on petitioner's violent, erratic behavior, such as having entered the father's home at night, intoxicated. Once inside the home, petitioner attacked the father and prompted him to call law enforcement. After petitioner left, the father noticed his wallet was missing. The parents

---

required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief in regard to this assignment of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address the assignment of error on appeal.

exchanged text messages about the wallet, after which the father returned home to find his wallet in the middle of his bed. According to the father, he believed that petitioner broke into the home a second time and placed the wallet there. Petitioner denied the allegation and obtained her own protective order against the father on the basis of threats in their text message exchange.

In April of 2018, the court held an adjudicatory hearing on the amended petition and found petitioner to be an abusive and neglectful parent. The court also granted petitioner an improvement period, after which the case proceeded for approximately two years. During that period, the court held multiple review hearings and extended petitioner's improvement period. However, at a dispositional hearing in January of 2020, the DHHR sought the termination of petitioner's parental rights. That hearing was ultimately continued after the court was unable to allow all parties the time necessary to present evidence. The continued dispositional hearing was held on March 4, 2020, at which point the court expressed its reluctance to terminate petitioner's parental rights. Instead, the court encouraged the parties to come to an agreement as to how the case should be resolved. After the parties engaged in discussion, the hearing resumed and counsel for the DHHR indicated that the DHHR was amenable to petitioner being denied custody of the children and having supervised visitation, at a minimum, once per week. Petitioner's counsel then clarified that he "explained that to [petitioner] and she's in agreement with that . . . and I think it's a just resolution in this matter." Having accepted petitioner's agreement to relinquish her custodial rights, the court then proceeded to enter an order memorializing relinquishment and granting her supervised visitation once per week, at a minimum.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]The permanency plan for the children is to remain in the custody of the nonabusing father.

Upon our review, we find no error in the circuit court's disposition. Importantly, petitioner cites to no authority mandating that a circuit court require a voluntary relinquishment of *custodial* rights be reduced to writing or otherwise require that a hearing be completed to permit a parent voluntarily relinquishing *custodial* rights to testify to the absence of fraud or duress. Instead, petitioner relies on authority governing the voluntary relinquishment of *parental* rights, while ignoring the fact that she benefitted from the circuit court accepting her relinquishment because she was allowed to retain her parental rights.

West Virginia Code § 49-4-607 provides that "[a]n agreement of a natural parent in termination of *parental* rights is valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud." (Emphasis added). Further, this Court has acknowledged that "[West Virginia Code § 49-4-607] permits a parent to voluntarily relinquish his/her *parental* rights. Such voluntary relinquishment is valid pursuant to [West Virginia Code § 49-4-607] if the relinquishment is made by 'a duly acknowledged writing' and is 'entered into under circumstances free from duress and fraud.'" Syl. Pt. 3, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007) (emphasis added). However, this Court has never extended these same requirements to a voluntary relinquishment of *custodial* rights, and, given the specific facts of the case before us, we decline to do so here.

Here, petitioner's main argument for finding error in the court's acceptance of her relinquishment of custodial rights is that "counsel at the time did not adequately explain the parties' agreement" and that she "believed the case was just going to be dismissed and she was still going to get to see her children." Petitioner does not allege that she believed that her children would be returned to her custody; instead, she simply alleges that she believed that she would still be permitted to interact with the children, which she is. As the circuit court directed, petitioner is permitted, *at a minimum*, visitation with the children once per week, and the DHHR expressed at the dispositional hearing that it was amenable to petitioner receiving more frequent visitation. Thus, her primary objection to the ultimate resolution is without a basis in the record, as petitioner is still entitled to frequent visits with her children, at a minimum of once per week.

Even more important is the fact that the case below proceeded for several years before the parties reached this agreed upon resolution, and we decline to remand the matter for more hearings when petitioner benefitted from her agreement to the outcome by not having to defend against a contested disposition and possibly having her parental rights terminated. As this Court has recognized, the voluntary relinquishment of parental rights—as opposed to custodial rights only—is a much more severe outcome, given that

> [a] final order terminating a person's parental rights, as the result of either an involuntary termination or a voluntary relinquishment of parental rights, completely severs the parent-child relationship, and, as a consequence of such order of termination, the law no longer recognizes such person as a "parent" with regard to the child(ren) involved in the particular termination proceeding.

*Id.* at 251, 654 S.E.2d at 375, syl. pt. 4. By voluntarily relinquishing her custodial rights only, petitioner foreclosed the possibility that the DHHR would establish by clear and convincing evidence that termination of her parental rights was appropriate. In short, petitioner benefitted

4

from proceeding in this manner, and any alleged error in the circuit court's acceptance of her agreement to voluntarily relinquish her custodial rights constitutes invited error. Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W. Va. 213, 719 S.E.2d 381 (2011) ("A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."). As such, petitioner is entitled to no relief on appeal.

Although we find that the specific facts of this matter do not require reversal, we nonetheless caution that in accepting voluntary relinquishments of custodial rights, best practice would dictate compliance with the requirements for acceptance of voluntary relinquishments of parental rights set forth in West Virginia Code § 49-4-607 that the relinquishment be in writing and free from fraud or duress. Further, this Court has explained that "[u]nder the provisions of W.Va. Code [§ 49-4-607], a circuit court may conduct a hearing to determine whether the signing by a parent of an agreement relinquishing parental rights was free from duress and fraud." Syl. Pt. 3, *State ex rel. Rose L. v. Pancake*, 209 W. Va. 188, 544 S.E.2d 403 (2001). As such, we encourage circuit courts to conduct hearings on voluntary relinquishments if there is any question as to whether a parent's decision is free of fraud or duress.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

5