# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **L.S.-1, S.M., L.S.-2, and E.S.**

**No. 21-0241** (Wood County 19-JA-118, 19-JA-119, 19-JA-120, and 19-JA-121)

## MEMORANDUM DECISION

Petitioner Mother N.S., by counsel Michele Rusen, appeals the Circuit Court of Wood County's February 16, 2021, order terminating her parental rights to L.S.-1, S.M., L.S.-2, and E.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Matthew E. DeVore, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating her as a neglectful parent, (2) finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect, and (3) in terminating her parental rights rather than extending her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed a child abuse and neglect petition against petitioner and the father alleging that then two-day-old L.S.-1 suffered a skull fracture and subdural hematoma while in their care in the hospital room. The DHHR alleged that once hospital staff discovered the child's head injury, petitioner claimed she was unaware of how it occurred but offered that the child may have bumped his head on the nightstand. According to the petition, hospital staff reported that prior to the incident, petitioner had twice been found allowing the child to sleep in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, as two of the children share the same initials, we refer to them as L.S.-1 and L.S.-2, respectively, throughout this memorandum decision.

unsafe conditions in her hospital room, despite previous instructions against such practices. The DHHR further alleged that petitioner's older children were similarly situated to L.S.-1 and were also abused and neglected children.

The next month, the DHHR filed an amended petition after petitioner disclosed that she previously lied about how L.S.-1 sustained a skull fracture and subdural hematoma. According to the amended petition, petitioner recanted her previous story and reported that she accidentally dropped L.S.-1 but chose not to inform hospital staff because she did not want to get in trouble. Based upon petitioner's new disclosure, the DHHR alleged that petitioner neglected L.S.-1 by failing to seek medical care for him following his accidental injuries.

Petitioner stipulated to the allegations of neglect in August of 2019. Specifically, petitioner stipulated that she failed to seek appropriate care for L.S.-1 after dropping him and thereby causing him to suffer a skull fracture and subdural hematoma. She also stipulated that her neglect of L.S.-1 placed L.S.-2, S.M., and E.S. at risk of neglect as similarly situated children. As a result, the circuit court adjudicated her as a neglectful parent. Thereafter, the court granted petitioner's motion for a six-month post-adjudicatory improvement period.

The circuit court held a review hearing in September of 2019 wherein it continued petitioner's improvement period. During the hearing, the circuit court denied petitioner's request to remove the drug screening requirement from the terms of her improvement period. In November of 2019, the circuit court held another review hearing wherein it was reported that petitioner had been discharged from parenting and adult life skills services due to inappropriate behavior toward the provider. The DHHR presented testimony that petitioner became angry and threw her cellphone during at least one session. The DHHR further demonstrated that while petitioner's drug screens were only positive for prescribed medications, she did not always participate in her required screens. The court continued petitioner's improvement period.

In January of 2020, the circuit court held a review hearing on petitioner's improvement period, during which the DHHR reported that petitioner had begun parenting services with a new provider and was attending sessions. However, the DHHR demonstrated that petitioner was not receptive to the concepts being taught and occasionally talked over the provider or discussed inappropriate topics during the lessons, making it difficult for petitioner to make progress. The next month, the circuit court held a hearing wherein it was reported that petitioner had intermittently screened negative for her prescription medications. As a result, the court added a requirement that her prescription medications be counted by service providers at the time of her screens. The DHHR further demonstrated that petitioner was noncompliant with therapy and had missed parenting classes. Despite these issues, the court extended petitioner's post-adjudicatory improvement period for an additional three months.

The court held a final post-adjudicatory improvement period review hearing in May of 2020, wherein the DHHR and guardian moved to terminate petitioner's improvement period for noncompliance. The DHHR and service providers submitted reports indicating that petitioner had been discharged from therapy for noncompliance, missed several drug screens, failed to keep in contact with her caseworker, failed to attend all of her parenting classes, and was uncooperative

and confrontational when these issues were addressed. Nevertheless, the circuit court granted petitioner a post-dispositional improvement period at the hearing.

During a review hearing in June of 2020, the DHHR reported that petitioner was complying with the terms and conditions of her post-dispositional improvement period. However, the circuit court held another hearing in August of 2020 wherein the DHHR demonstrated that petitioner missed four of ten scheduled drug screens, missed appointments with service providers, and was facing eviction. As a result, the DHHR recommended termination of the improvement period, but the court denied the motion. The court held a third review hearing regarding petitioner's post-dispositional improvement period in October of 2020 wherein the DHHR reported that petitioner was "minimally compliant" with the terms and conditions of her improvement period. The DHHR reported that petitioner had been admitted to Westbrook Health Services' Crisis Stabilization Unit in September of 2020, where she remained for a few days. After her discharge, the DHHR put on evidence that petitioner continued to miss drug screens, struggled with housing issues, and blamed her noncompliance with services on external issues. As a result, the court terminated petitioner's post-dispositional improvement period but ordered that services continue prior to the final dispositional hearing.

After the termination of her post-dispositional improvement period, petitioner completed detoxification and entered an inpatient drug treatment program. Although petitioner was initially compliant in that program, she was discharged in November of 2020 after returning to the facility under the influence of prescription medication in violation of the program's rules. After her discharge, petitioner entered into another long-term treatment program. However, petitioner voluntarily left that program after two to three months without completing the program.

The circuit court held a final dispositional hearing in February of 2021 wherein it terminated petitioner's parental rights to the children. The DHHR put on evidence of petitioner's noncompliance with services throughout the proceedings. After hearing the evidence, the circuit court found that petitioner had been receiving services for a year and a half but was not making progress. The court further found that she was not any closer to reunification with the children than when she began services in August of 2019. The court found that petitioner had missed drug screens and admitted relapsing despite strongly denying early in the case that she had any issues with substance abuse. As a result, the court found that petitioner had not dealt with her substance abuse issues. The court found that petitioner was unwilling to fully participate in any long-term treatment programs or follow program rules and guidelines. The court further found that petitioner had failed to maintain contact with the DHHR and had not seen the children in several months. As such, the circuit court concluded that petitioner had not "substantially complied" with the terms of her improvement period such that an extension was warranted. Ultimately, it found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. Petitioner now appeals the circuit court's February 16, 2021, order terminating her parental rights to the children.[2]

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for L.S.-1, L.S.-2, and E.M. is adoption in their current foster placement. The permanency plan for S.M. is adoption by her relatives.

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating her as a neglectful parent. It is unnecessary to address this argument, however, because she stipulated to the same. We have previously held that "'[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.' Syllabus Point 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W.Va. 213, 719 S.E.2d 381 (2011). Further,

"[a] judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal." Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), *overruled on other grounds* by *Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001).

*Id.* at 215, 719 S.E.2d at 383, Syl. Pt. 3. The record in this matter is clear that petitioner voluntarily chose to stipulate to the adjudication against her as it relates to all of the children. Moreover, petitioner did not object to her adjudication as a neglectful parent before the circuit court, nor did she challenge the sufficiency of the allegations against her as contained in the DHHR's petition. In fact, the record shows a brief discussion between the circuit court and the parties concerning the sufficiency of petitioner's stipulation in regard to her adjudication. For these reasons, petitioner is entitled to no relief in regard to adjudication in this matter, as she clearly invited any such alleged error by entering into a stipulated adjudication.

Next, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of neglect. In support of her argument, petitioner contends that the only condition of abuse or neglect which needed to be corrected was her understanding and need to follow through with obtaining appropriate medical treatment for the children. Petitioner argues that the DHHR never admitted evidence that she did not understand the need to obtain medical treatment for the children during her improvement period. Therefore, petitioner contends that the DHHR failed to prove by clear and convincing evidence that she was

not capable of substantially correcting the conditions of neglect. We find petitioner's argument unpersuasive.

West Virginia Code § 49-4-604(c)(6) provides that "upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is "necessary for the welfare of the [children]," then the circuit court may terminate the parental rights of an abusing parent. West Virginia Code § 49-4-604(d) provides that these conditions exist when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." For example, when "the abusing parent . . . [has] not responded to . . . a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of a child as evidenced by the continuation . . . of [the] conditions." W. Va. Code § 49-4-604(d)(3). When considering whether an abusing parent responded to a reasonable family case plan, the circuit court must consider what progress, if any, was made during the abusing parent's improvement period.

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of *all the circumstances of the case* to justify the return of the [children].

Syl. Pt. 2, *In re C.M.*, 235 W. Va. 16, 770 S.E.2d 516 (2015) (emphasis added).

The record is clear, when considering all of the circumstances, that petitioner did not make sufficient improvement in her parenting. Several review hearings were held throughout the proceedings, many of which illustrated major concerns. In November of 2019, petitioner was discharged from parenting and adult life skills services due to inappropriate behavior toward the provider, including petitioner angrily throwing her cellphone during at least one session. In January of 2020, the DHHR reported that petitioner had begun parenting services with a new provider but that she was not receptive to the concepts being taught and talked over the provider or discussed inappropriate topics during the lessons, making it difficult for her to progress. The next month, petitioner intermittently screened negative for her prescription medications. As a result, the circuit court added a requirement that her prescription medications be counted by service providers at the time of her screens. The court further found that petitioner was noncompliant with therapy and had missed parenting classes. Despite these issues, the court extended petitioner's post-adjudicatory improvement period for an additional three months in February of 2020. By May of 2020, the DHHR and guardian indicated that petitioner had been discharged from therapy for noncompliance, missed several drug screens, failed to maintain contact with her caseworker, failed to attend all of her parenting classes, and was uncooperative and confrontational when these issues were addressed. Nevertheless, the circuit court granted petitioner a post-dispositional improvement period. In August of 2020, petitioner missed four of ten scheduled drug screens, missed appointments with service providers, and was facing eviction. By October of 2020—over one year after first granting petitioner a post-adjudicatory improvement period—the DHHR reported that petitioner was "minimally compliant" with the terms and conditions of her post-dispositional improvement period. The DHHR demonstrated that petitioner continued to miss drug screens,

struggled with housing issues, and blamed her noncompliance with services on external issues. In short, petitioner failed to respond to a reasonable family case plan designed to remedy the conditions of neglect.

Petitioner was afforded substantial time to improve, yet her progress was very slow, and the circuit court noted deficiencies at multiple review hearings. Nonetheless, the circuit court continued to give petitioner opportunities to improve. Finally, after a year and a half of services and instruction, petitioner was unable to provide the children with basic medical and educational care, continued to exercise poor judgement, and failed to remain drug free. When considering the lack of petitioner's improvement over the length of the case, we find that the circuit court did not clearly err in finding there was no reasonable likelihood that the conditions of abuse or neglect could be corrected in the near future.

Next, petitioner argues that the circuit court erred when it declined to extend her post-dispositional improvement period. She emphasizes that she was "very involved in her improvement period for a number of months, so much so that she obtained an extension of her post-adjudicatory improvement period on the merits of her participation." Petitioner contends that she visited the children and applied lessons from her parenting classes during those visits. Petitioner also notes that she regularly attended hearings and multidisciplinary team meetings. While petitioner acknowledges that she regressed during the COVID-19 pandemic due to "unforeseen life stressors," she argues that she demonstrated substantial progress during most of her improvement periods and should have been granted an extension. Upon our review, petitioner is entitled to no relief on appeal.

West Virginia Code § 49-4-610(6) governs extensions to improvement periods and provides that

> [a] court may extend any improvement period . . . for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child[ren].

*See also* Syl. Pt. 7, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010) (holding that the circuit court must make the findings specified in West Virginia Code § 49-4-610(6) prior to granting an extension of an improvement period).

Here, the circuit court did not err in denying petitioner's motion for an extension of her post-dispositional improvement period due to her failure to substantially comply with the terms and conditions of that improvement period. "When any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A). As found by the circuit court, petitioner missed appointments with service providers, failed to consistently drug screen, and failed to consistently participate in parenting classes. Additionally—contrary to her claims—petitioner failed to consistently exercise visitation with the children, going months without seeing them at

the time of the final dispositional hearing. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Based on petitioner's failure to meet these terms of her post-dispositional improvement period, the circuit court did not abuse its discretion in concluding that petitioner had not "substantially complied" with the terms of her improvement period.

Furthermore, West Virginia Code § 49-4-610(9) provides that

no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

In February of 2021, when the circuit court issued its final decision, the children had already been in foster care since June of 2019. The circuit court considered this statutory requirement and did not find compelling circumstances existed to extend the time limits for improvement periods. Accordingly, we find no error in the circuit court denying petitioner's motion for an extension of her improvement period.

Finally, petitioner argues that the circuit court abused its discretion in terminating her parental rights when less-restrictive alternatives were available. She asserts that she substantially complied with the terms of her improvement period despite "some minor setbacks." Petitioner avers that the children's best interests would have been served by returning them to her custody because the children "share affection and love with [p]etitioner which may have blossomed into reunification." We disagree.

As noted above, West Virginia Code § 49-4-604(c) provides that a circuit court may terminate the parental rights of an abusing parent upon finding that there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future and that termination is necessary for the welfare of the children. The circuit court properly considered petitioner's lack of progress throughout this lengthy case, in addition to the children's need for permanency. Petitioner could not meet the needs of her children despite a year and a half of services and instruction. We have previously held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4. Therefore, we find that the circuit court did not abuse its discretion in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 16, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

7

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton